IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TORREY TWANE MCNABB,                )
                                    )
              Petitioner,           )
v.                                  )     CASE NO. 2:08-cv-683-MEF
                                    )        [WO – Publish]
KIM T. THOMAS, Commissioner,        )
Alabama Department of Corrections,  )
                                    )
              Respondent.           )

## MEMORANDUM OPINION AND ORDER

Torrey Twane McNabb is an Alabama death row inmate.  On August 20, 2008, McNabb filed an petition for a writ of habeas corpus (Doc. # 1) in this Court pursuant to 28 U.S.C. § 2254.  The petition is eighty-three pages and asserts twenty-six separate grounds for relief.  Respondent Kim T. Thomas ("Respondent" or "the Commissioner") contends that some of the claims are procedurally defaulted (Docs. # 36, 41), and that the remainder should be dismissed on the merits (Doc. # 49).  Petitioner has filed responses in opposition to both of these contentions.  (Docs. # 38, 50.)  After considering the arguments of counsel, the twenty-seven volume state court record, and the relevant law, the Court finds that McNabb's petition is due to be **DISMISSED**.

# I. BACKGROUND[1]

On January 7, 1999, after a highly publicized trial which necessitated sequestration of the jury, McNabb was convicted of two counts of capital murder for his shooting of Montgomery Police Officer Anderson Gordon.  The murder was made capital because it was committed while Officer Gordon was on duty, *Ala. Code* § 13A-5-40(a)(5), and because it was committed while Officer Gordon was in his patrol car, *Ala. Code* § 13A-5-40(a)(17).  McNabb also was convicted of two counts of attempted murder against Sanford Sharpe, a bail bondsman, and against Montgomery Police Officer William Perkins.  After a sentencing hearing, the penalty phase of the trial, the jury found one or more statutory aggravating circumstances and, after weighting the aggravating and mitigating circumstances, recommended by a vote of 10 to 2 that McNabb be sentenced to death for his capital murder convictions.  The trial court obliged the jury and sentenced McNabb to death, and also sentenced McNabb to 20 years of imprisonment for each count of attempted murder.

McNabb raised a number of issues on direct appeal.  The Alabama Court of Criminal Appeals affirmed McNabb's convictions and sentences in a thorough and lengthy opinion. *McNabb I*, 887 So. 2d at 989, 993.

The Supreme Court of Alabama granted McNabb's petition for certiorari to review whether the trial court erred in its instructions to the jury at the penalty phase of McNabb's

---

[1]  The full factual (and tragic) account of McNabb's crimes can be found in the Alabama Court of Criminal Appeals's opinion on direct appeal.  *McNabb v. State*, 887 So. 2d 929, 939-44 (Ala. Crim. App. 2001) (hereinafter *McNabb I*).

trial. *Ex parte McNabb*, 887 So. 2d 998, 999 (Ala. 2004) (hereinafter *McNabb II*). The Supreme Court of Alabama ruled that the trial court did not err, and affirmed McNabb's sentences.

McNabb's direct appeal concluded when the United States Supreme Court denied certiorari on November 29, 2004. *McNabb v. Alabama*, 125 S. Ct. 606 (2004).

On May 24, 2005, McNabb renewed his assault on his conviction and sentence through collateral review by filing a Rule 32 petition in the Circuit Court of Montgomery County. *See McNabb v. State*, 991 So. 2d 313, 316 (Ala. Crim. App. 2007) (hereinafter *McNabb III*). All of McNabb's collateral review arguments were rejected by the Circuit Court and summarily dismissed for failure to meet the heightened Rule 32 pleading standards.[2][3] *See* Ala. R. Crim. P. 32.6(b) (stating that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought"). The Circuit Court also made alternative findings that McNabb's claims should be dismissed on their merits. The Court of Criminal Appeals affirmed, mostly adopting the Circuit Court's findings and reasoning as its own. *Id.*

---

[2] The circuit court adopted almost verbatim the State's proposed order denying McNabb's Rule 32 petition. *McNabb III*, 991 So. 2d at 316.

[3] The Circuit Court also summarily dismissed McNabb's method of execution claim regarding the then-current lethal injection protocol for McNabb's failure to raise the claim on direct appeal, Rule 32.2(a)(5). In a noted departure from the Circuit Court's ruling, the Court of Criminal Appeals addressed McNabb's claim, but still found that summary dismissal was appropriate under Rule 32.2(b)(6), finding the claim to be "without merit." *McNabb III*, 991 So. 2d at 333.

The Alabama Supreme Court denied certiorari review of the Court of Criminal Appeals's decision in *McNabb III*, stating – somewhat opaquely – that "[i]n denying the petition for the writ of certiorari, this Court does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Criminal Appeals' opinion." *Ex parte McNabb*, 991 So. 2d 336 (Ala. 2008) (hereinafter *McNabb IV*).[4]

Having exhausted state review options, McNabb filed the federal habeas corpus petition that is now pending before this Court. The following discussion addresses all of the claims raised in McNabb's petition for habeas relief, including Respondent's contention that some of McNabb's claims are procedurally defaulted.

## II. STANDARDS OF REVIEW

### A.  The Procedural-Default Doctrine

"The procedural-default doctrine 'dictates that a state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim.'" *Frazier v. Bouchard*, 661 F.3d 519, 524 (11th Cir. 2011) (quoting *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010)). The doctrine is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730, and "was developed as a means of ensuring that federal habeas petitioners first seek relief in

---

[4]  Without wishing to be perceived as passing judgment on the depth of treatment actually given to McNabb's Rule 32 petition, the Court does note that the State's proposed order summarily dismissing McNabb's petition became verbatim the Circuit Court of Montgomery County's ruling, and then was largely re-adopted by the Court of Criminal Appeals (*McNabb III*), and finally was not reviewed, but nevertheless curiously criticized, by the Alabama Supreme Court in denying certiorari (*McNabb IV*).

accordance with established state procedures," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

The procedural-default doctrine applies when:  "(1) the state court has plainly stated that it is basing its decision on the state [procedural] rule; (2) the state rule is 'adequate,' i.e., not applied in an arbitrary manner; and (3) the state rule is 'independent,' i.e., the federal constitutional question is not intertwined with the state law ruling." *Frazier*, 661 F.3d at 525.

Even if the claim is procedurally defaulted, the petitioner may still pursue federal habeas relief if "either (1) an adequate cause for and actual prejudice arising from the default [exists], or (2) 'that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur' if the petitioner's federal claims are not considered." *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 908 (11th Cir. 2006) (quoting *Lynd v. Terry*, 470 F.3d 1308, 1313-14 (11th Cir. 2006)); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## B.    The Merits of the § 2254 Petition

For claims "adjudicated on the merits in State court proceedings[,]" the deferential review standards of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) control this Court's analysis:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see also Loggins v. Thomas*, 654 F.3d 1204, 1208 (11th Cir. 2011).  A claim will be considered "adjudicated on the merits" for purposes of § 2254(d) despite having received scant treatment in state court.  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) (holding that a one-sentence summary denial of a claim in state court is an adjudication on the merits).  For claims reviewed under § 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

On the other hand, if the federal claim has not been adjudicated on the merits, then a *de novo* standard of review applies.  *See Magwood v. Warden, Ala. Dep't of Corr.*, 664 F.3d 1340, 1347 (11th Cir. 2011) (quoting and citing *Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009)).

## III.  DISCUSSION

### A.    <u>Claims A(1)-A(7) (The Ineffective Assistance of Counsel Claims)</u>

#### 1.    *Claims A(2)-A(5) Are Not Procedurally Defaulted*

Respondent argues that McNabb has procedurally defaulted on his ineffective assistance of counsel claims because the Circuit Court of Montgomery County, as affirmed by the Court of Criminal Appeals, summarily dismissed those claims for failure to meet Ala. R. Crim. P. 32.2(b)(6)'s heightened pleading requirements.  In other words, Respondent asserts that a summary dismissal for pleading defects constitutes an adequate and independent state procedural ground, and, thus, McNabb has procedurally defaulted on those claims.

6

This argument can be rejected forthrightly.  First, the Eleventh Circuit has ruled that "because a dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires an evaluation of the merits of the underlying federal claim, the Court of Criminal Appeals's determination was insufficiently 'independent' to foreclose federal habeas review." *Frazier*, 661 F.3d at 525; *see also Borden v. Allen*, 646 F.3d 785, 816 (11th Cir. 2010) (holding that "an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim" and stating that "we cannot construe such a rule to be a state procedural bar that would preclude [federal court] review"); *see also Powell v. Allen*, 602 F.3d 1263, 1272-73 (11th Cir. 2010).  Second, the Court of Criminal Appeals and the Circuit Court of Montgomery County made alternative findings relating to the substance of McNabb's ineffective assistance claims, which the Eleventh Circuit has described as "pass[ing] on the merits of the relevant claim" to a sufficient degree so as to make the claims not procedurally defaulted.  *Frazier*, 661 F.3d at 525-27.  Accordingly, these claims will not be treated as procedurally defaulted.

## 2.    *The Merits of the Ineffective Assistance Claims*

All seven of the ineffective assistance of counsel claims were "adjudicated on the merits" in McNabb's Rule 32 proceedings.  *See McNabb III*, 991 So. 2d at 318-33. Accordingly, the Court applies the deferential AEDPA review standard found at § 2254(d)(1):  whether the State court's adjudication of these claims "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Id.*; *see also Terry Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (portion of Justice O'Connor's opinion for the Court defining "contrary to" and "unreasonable application"). The Supreme Court has commented on the interplay of *Strickland v. Washington*, 466 U.S. 668, 690 (1984), and AEDPA, stating that, in concert, they create a "'doubly deferential' standard . . . ." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11 (2011) (citing *Terry Williams*, 529 U.S. at 395-97). "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d)[.]'" *Id.* (quoting *Strickland*, 466 U.S. at 689 and *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 n.2 (2009)). Ultimately, McNabb has not shown that the Alabama Court of Criminal Appeals's rejection in *McNabb III* of his ineffective assistance claims involved an unreasonable application of federal law.

  a.  **Failure to Present Mitigation Evidence, Investigate Mitigating Circumstances, Secure Services of Mitigation Expert, Make Effective Closing Argument (A(1)-A(4))**

  McNabb bemoans his trial counsel's alleged shortcomings at the penalty phase of trial. These alleged shortcomings consist of the failures to: "produce a single witness or introduce a shred of evidence in the penalty phase of the trial, despite the mountains of evidence available at their fingertips[,]" (Pet. 23); "conduct an adequate investigation into possible mitigating circumstances" relating to McNabb's background, (Pet. 31); obtain the services of "medical and mental health experts [who] could have explained the consequences of

[McNabb's] childhood instability, deprivation, abandonment, emotional abuse, and substance abuse[,]" (Pet. 33); and "focus [in closing argument] the attention of the jury on the individual characteristics of the defendant[,]" (Pet. 36). All of these grounds for relief are due to be rejected on account of McNabb's counsel's reasonably sound strategic decisions regarding the penalty phase of McNabb's trial.

The Court begins its *Strickland* analysis "with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy.'" *Pinholster*, 131 S. Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("[T]here is a strong presumption that [counsel took certain actions] for tactical reasons rather than through sheer neglect." (citing *Strickland*, 466 U.S. at 690)).

The "mountains of evidence" that McNabb's counsel "failed" to investigate or present relate to McNabb's extraordinarily troubled childhood. In rejecting McNabb's identical ineffective assistance claims, the Alabama Court of Criminal Appeals placed much reliance on the fact that McNabb had testified concerning his childhood at the guilt phase of the trial. *McNabb III*, 991 So. 2d at 329-32. The Court of Criminal Appeals found it "clear from the record that the very mitigating evidence McNabb contends was not presented to the jury was, in fact, before the jury as a result of McNabb's own testimony during the guilt phase of his trial." *Id.* at 331. The Court of Criminal Appeals also rejected McNabb's failure to investigate claim because McNabb "has not indicated what additional *details* could have

been or should have been investigated [but were not]. . . ." *Id.* at 329.  McNabb's failure to investigate claim is due to be dismissed on this ground.[5]  Second, there is no clearly established federal law that counsel's performance is deficient for failing to re-hash at the penalty phase what has already been offered at the guilt phase.

Moreover, it is apparent that McNabb's counsel made a strategic choice in not presenting the violent aspects of McNabb's childhood.[6]  That strategy becomes clear after

---

[5]  It appears that McNabb's quarrel is with the fact that his counsel did not present the whole picture of his childhood at the penalty phase of trial, *infra* at note 6.  By not presenting the whole picture, McNabb assumes, without any factual support, that counsel did not investigate the whole picture.  Assumptions do not get claims off the ground.

[6]  The story told by McNabb about his childhood during the guilt phase of the trial (R. 2183, *et seq.*) is compressed to the following factual account.  McNabb spent his early years in the Gibb's Village projects in Montgomery and lived with his mother, aunt, grandmother, and younger siblings and cousins (about 9 or 10 people in a two-bedroom apartment).  McNabb's mother had been a drug addict "for as long as [he] could remember" and was not around because she spent a considerable amount of time at crack houses.  At fourteen, his grandmother moved to Florida, and his mother, around the same time, began dating a drug dealer named Keith Chainey, who moved into the Gibb's Village apartment when McNabb was 15.  Chainey enlisted McNabb to deal drugs shortly thereafter.  McNabb himself began using cocaine at age 15, but was attempting to provide for his younger siblings.  Chainey's dealing out of the house resulted in the family's eviction; McNabb's mother and several of his siblings left with Chainey, abandoning McNabb.  From that time until his arrest for the charges that led to his death sentence, McNabb was homeless to a degree.  McNabb continued selling drugs to self-provide, and dropped out of school in the 9th grade.  His drug dealing got him in trouble with the juvenile court system and he was forced to attend "boot camp" for possessing drugs and a .22 caliber pistol.  At age 17, he attempted to get help for his mother by paying for her to go to a rehabilitation clinic.  McNabb moved in with a cousin and tried to get regular work.  By 1997, his addiction to cocaine grew stronger, and he was snorting one gram three times per week.  In February of that year, McNabb was arrested for possession of stolen property (a gun).  In March of 1997, he was arrested for possession of crack cocaine and giving a false name.

The story McNabb now hopes the jury heard at the penalty phase includes the following additional facts.  McNabb's mother, Cynthia McNabb, herself was an addict from a very young age, and was also a sexual abuse victim.  McNabb did not know his father in his early childhood because he was incarcerated.  By age 5, McNabb's mother was prostituting herself for drugs and would only return to the apartment for any period of time when she was in the advanced stages of

reviewing the transcript of McNabb's counsel's closing argument at the penalty phase of the trial.  McNabb's trial counsel made the strategic choice to gloss over McNabb's violent past and to present McNabb's violent outburst (the killing of Officer Gordon) as both uncharacteristic and driven by a cocaine-induced state of paranoia.  McNabb's counsel stated the following:

> And think about what Dr. Holbrook said about the [e]ffects of cocaine.  I ask you to think about that when you consider the verdict in this case.  And that is . . . the paranoia effect [of] cocaine . . . .  Then think back to the circumstances of the crime because something has to explain this crazy crime.  Something has to explain this person who reacts in such a way, because Torrey [McNabb] doesn't have a prior record of crimes of violence that have been felonies.  Sure, he was fighting in school.  He made a choice to get out of school in the 9th grade . . . .  The bottom line is:  His stuff is petty fights and things of that nature.  So what triggered this fellow to go up there and pull out a gun, and he sure had a gun, and shoot this man in such a way?

(R. 2689-90.)  In other words, McNabb's counsel sought to portray the crime as not befitting of McNabb's character.  If counsel had gone into great detail concerning McNabb's past, or had even called any witnesses to testify concerning McNabb's past (who would be subject

---

pregnancy.  Around the same time, McNabb failed the first grade and had episodes of "acting out" and getting in fights at school.  Loveless Elementary School suspended him multiple times for his violence.  It was documented that he was a slow reader, and he was forced to repeat the fifth grade.  At age 14, McNabb was exposed to his father's lifestyle, who had since been released from prison.  His father's life was narcotic and violent.  McNabb's father stabbed his girlfriend and was stabbed by his girlfriend on separate occasions.  To compound the problem, the only source of stability in McNabb's life, his grandmother, moved away around the same time.  McNabb was suspended from McIntire Junior High School several times, was repeatedly involved in fights, and was wearing a bullet-proof vest to school whenever he did attend.

It is important to note that the first paragraph placed a particular emphasis on McNabb's early exposure to drugs.  The second paragraph – the alleged omissions to the jury – highlights McNabb's and his family's history of violent behavior.

to cross-examination on that subject), he risked exposing the jury to a contrary idea. Presenting the evidence McNabb now says should have been presented could have torpedoed McNabb's counsel's drug-centered mitigation case.[7]

That the strategy ultimately failed does not make counsel's performance deficient. Nor is counsel's performance deficient because McNabb contends that there may have been a more effective mitigation case. The Constitution guaranteed McNabb reasonably effective assistance of counsel, not a prophetic counsel who could divine which of two mitigation cases the jury ultimately would find more attractive.

Because counsel's performance was not deficient, the denial of McNabb's Rule 32 petition on these ground did not involve an unreasonable application of clearly established federal law, and McNabb's claims labeled A(1)-A(4) are due to be dismissed.

### b.    Failure to Procure Necessary Expert Assistance to Effectively Challenge the State's Case at Guilt Phase (A(5))

McNabb argues that "[a]lthough defense counsel presented expert evidence by Dr. John Holbrook that *explained* cocaine paranoia to the jury, they failed to produce any evidence linking cocaine paranoia to [McNabb] himself, beyond McNabb's own testimony." (Pet. 37.) This claim is due to be rejected as failing to satisfy the highly deferential review standards for *Strickland* claims under § 2254(d)(1).

---

[7] The prosecution of the case saw McNabb's counsel's strategy as threatening. Much of the prosecution's cross-examination of McNabb sought to elicit his violent traits and to call into question his cocaine addiction defense. The Court notes that Mr. McNabb himself was not too helpful to his prime defense on cross-examination, stating essentially that he was not addicted to cocaine.

The Court of Criminal Appeals affirmed the Circuit Court, finding that McNabb's claim was insufficiently pleaded under Rule 32.2(b)(6). *McNabb III*, 991 So. 2d at 322-23 & n.2. Although the merits of this particular claim are not explained in great detail, the summary dismissal is nevertheless a "merits" ruling, and this Court concludes that the Court of Criminal Appeals's ruling was not an unreasonable application of clearly established federal law.

Put simply, counsel's performance was not deficient. Dr. Holbrook, a Professor of Pharmacology at Mercer, whose specialty was psychopharmacology and who wrote his dissertation on the psychological and physical effects of cocaine, testified immediately after McNabb. McNabb's own testimony remained fresh in the jury's recollection when Dr. Holbrook took the stand. Counsel's strategy appears to have been to buttress McNabb's testimony regarding his cocaine use and extreme fear during the incident with Dr. Holbrook's scientific explanation of that fear.

Dr. Holbrook testified that cocaine causes the brain to produce more dopamine than usual, resulting in a euphoric effect. He testified as to the behaviors exhibited by people who have become dependent on cocaine. As to denial, he testified that many heavy users of cocaine do not feel as though they have a problem. This testimony served to rehabilitate McNabb's own denial of his prime defense on cross-examination, *supra* at note 7. Cocaine-dependent persons also might use all they have in a single binge episode, testified Dr. Holbrook. Indeed, McNabb's story to the jury was that he snorted all of the remaining

cocaine in his possession the morning of the killing. Furthermore, Dr. Holbrook explained the similarities between cocaine use and paranoid schizophrenia. Schizophrenics, like cocaine users, have an excess amount of dopamine in the brain, which, Dr. Holbrook testified, may be the reason that cocaine addicts will display behavior identical to paranoid schizophrenics. As to the paranoia that attaches to a cocaine-dependent person's interactions with the world, Dr. Holbrook testified that a cocaine-dependant person experiencing paranoia will live in an "altered reality," a perceived world where others are plotting to do them harm. Finally, McNabb's counsel asked Dr. Holbrook a detailed hypothetical question clearly based upon his theory of McNabb's cocaine use, and whether that hypothetical person would exhibit paranoid behavior. Dr. Holbrook responded that the hypothetical individual "very, very, very likely [would] exhibit paranoid behavior." (R. 2312.) In short, Dr. Holbrook was a strong witness in advancing McNabb's cocaine-paranoia defense.

McNabb claims counsel was ineffective for not calling Dr. Stanley Brodsky, who actually examined McNabb and who allegedly would have been permitted to testify to an expert opinion on McNabb and cocaine-paranoia. The Court must presume that McNabb's counsel chose not to call an expert who had examined McNabb for a reason; perhaps such an examination would have revealed that McNabb was not quite as cocaine-dependent as McNabb's counsel portrayed (which was, in fact, McNabb's own testimony as well as the prosecution's position). *See Pinholster*, 131 S. Ct. at 1404.

14

Either way, the testimony McNabb now hopes had been given would have added little to what was already before the jury, and McNabb is not prejudiced by his counsel's alleged deficiency in "failing" to call Dr. Brodsky. It should not have been difficult to make the connection that the hypothetical person posed to Dr. Holbrook was intended to be McNabb. In short, there is no reasonable probability the outcome of the guilt phase of the trial would have been different. McNabb's ineffective assistance claim labeled A(5) is due to be dismissed.

### c.   Failure to Object to Victim Impact Evidence at Guilt Phase (A(6))

McNabb next contends that his counsel's performance was deficient for failing to object to improper victim impact testimony from the victim's mother. (Pet. 38.) The Court of Criminal Appeals found that the testimony "simply had no effect on the outcome of the trial." *McNabb III*, 991 So. 2d at 325. First, the Court notes that the victim impact testimony in this case would not have been improper if introduced at the penalty phase. Arguably, the most damaging impact testimony from Officer Gordon's mother was that his son would be deprived of a father. However, this is precisely the sort of victim testimony that the Supreme Court allowed in *Payne v. Tennessee*, 501 U.S. 808, 814-15, 826-27 (1991). Thus, the only objection for its introduction at the *guilt* phase would have been on relevancy grounds. McNabb did not suffer prejudice within the meaning of *Strickland*, because there is no reasonable probability that, but for the error in failing to object to Officer Gordon's mother's testimony, the result of the proceedings (both the guilt and penalty phases) would have been

15

different.  *Strickland*, 466 U.S. at 694.  Given the overwhelming evidence of guilt at the guilt

phase of the trial, the conclusion of the Court of Criminal Appeals that any error did not

"undermine confidence in the outcome" of the trial was not an unreasonable application of

clearly established federal law.  *Id*.; § 2254(d)(1).  McNabb's claim labeled A(6) is due to

be dismissed.

> **d.  Failure to Object to "Future Dangerousness" Evidence at Guilt and Penalty Phases of Trial (A(7))**

McNabb argues that his trial counsel was deficient for failing to object to the

prosecution's evidence regarding statements McNabb supposedly made to Michael Dean

Paluch.  McNabb argues the admission of the statements constituted improper evidence of

"future dangerousness," which is not a statutory aggravating factor to be considered at the

penalty phase.  The statement of Paluch, who testified in the prosecution's rebuttal case, was

that McNabb said to him:  "I shot that mother fucker [Officer Gordon].  I'd shoot that mother

fucker again.  I don't give a fuck about that man."  (R. 2339.)

The Circuit Court found, and the Court of Criminal Appeals agreed, that "'this

testimony was offered to show McNabb's state of mind and to rebut the defense's theories

that McNabb shot Officer Gordon in self-defense and that McNabb did not have the requisite

intent to kill due to cocaine intoxication.'"  *McNabb III*, 991 So. 2d at 326-27 (quoting the

Circuit Court's Order).  This Court agrees with the Court of Criminal Appeals that counsel's

performance was not deficient because such an objection finds "no foundation in the record."

*Id.* at 327.  McNabb's statements are especially relevant to his main defense of cocaine

paranoia: that he did not shoot Officer Gordon with the requisite intent to kill. His statement to Paluch directly rebuffs that defense. Counsel is not deficient for failing to object to properly admitted evidence, even if that evidence is damaging.

McNabb argues that the prosecution's reminder to the jury of that statement at the penalty phase of the trial also constituted impermissible argument relating to "future dangerousness," to which McNabb's counsel failed to object. It does not appear that the Court of Criminal Appeals addressed the argument in this particular context, but this Court has reviewed the record and concludes that the prosecutor's invocation of Paluch's testimony was directed both at McNabb's own mitigation argument (that the episode was out of character because of cocaine paranoia) and at McNabb's arguments in opposition to the three statutory aggravating factors found to exist by the jury. Those statutory factors all included *mens rea* elements (*knowingly* creating a great risk of death to many persons, that the murder was committed *for the purpose of* avoiding or preventing a lawful arrest or effecting an escape from custody, that the murder was committed [*in order*] *to* disrupt or to hinder the lawful exercise of any governmental function or the enforcement of laws), which McNabb's counsel argued against on account of McNabb's cocaine paranoia. The statement to Paluch aided the prosecution's refuting of those arguments.

Furthermore, even if the prosecutor did intend for the jury to use the evidence as a non-statutory aggravating factor, she only repeated what the jury had already (properly) heard once, and there is no reasonable probability that the outcome of the trial would have been

17

different had the prosecutor not recalled for the jury Paluch's testimony at the penalty phase. McNabb's claim labeled A(7) is due to be dismissed.

**B.**    **Claims B(1) and B(2) (The Juror Bias Claims)**

First, the Court notes that it will summarily dismiss McNabb's Sixth Amendment and Fourteenth Amendment impartial jury claim for juror bias as it relates to prospective juror Barrow, and any other impartial jury claims regarding prospective jurors who did not serve on the jury. The Supreme Court of the United States has "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *see also Feltrop v. Delo*, 46 F.3d 766, 773-74 (8th Cir. 1995). Accordingly, the Court need not address whether these claims are procedurally defaulted. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Loggins*, 654 F.3d at 1215 (collecting cases).

However, McNabb also asserts that the trial court's repeated refusals to remove prospective jurors for cause based upon (1) their voir dire responses indicating a willingness to give "automatic" application of the death penalty and/or (2) exposure to and prejudice by pretrial publicity violated McNabb's Fourteenth Amendment due process rights by arbitrarily depriving him of the full complement of peremptory strikes allowed under Alabama law. *Ross*, 487 U.S. at 88-90 (stating that "the 'right' to peremptory challenges is 'denied or

18

impaired' only if the defendant does not receive that which state law provides").  In other words, McNabb contends that he was forced to use a substantial number of his peremptory strikes on jurors who should have been stricken for cause for one of the two reasons, which "denied or impaired" his right under Alabama law to peremptory strikes.  *Ross*, 487 U.S. at 88-90; *see also Swain v. Alabama*, 380 U.S. 202, 219 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79 (1986).

### 1.   *Pretrial Publicity Claims*

### a.   **Fourteenth Amendment Due Process Deprivation of Peremptory Strikes Claim**

McNabb used one of these peremptory strikes on prospective juror Judith Barrow. Respondent argues that this claim – but only as it relates to pretrial publicity – is procedurally defaulted because McNabb did not raise it on direct appeal.  McNabb concedes that "[j]uror Barrow was not one of the jurors listed in [the pretrial publicity] section of the [appellate] brief." (Doc. # 38, at 40.)  McNabb's Fourteenth Amendment due process claim based upon the denial of a state-created right to peremptory strikes does not rise and fall, necessarily, on prospective juror Barrow.  However, a finding that the trial court should have struck prospective juror Barrow for cause (based upon prejudice by pretrial publicity) is a necessary component of the claim, and McNabb's failure to raise the issue as it relates to pretrial publicity on direct appeal procedurally defaults consideration of Barrow as part of that claim.

Moreover, assuming that McNabb could show cause for the default, McNabb cannot show actual prejudice.  The "actual prejudice" prong of the "cause and prejudice" exception

to procedural default requires that "the error worked to [McNabb's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ward v. Hall*, 592 F.3d 1144, 1178 (11th Cir. 2010). In determining actual prejudice, the Court must pose to itself the following question: "'Did the intrusion affect the jury's deliberations and thereby its verdict?'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 739 (1993)). Even assuming that Ms. Barrow should have been struck from the jury for cause on account of pretrial publicity, McNabb did use a peremptory strike to remove Ms. Barrow from the jury. That fact by itself precludes a finding of actual prejudice.

Moreover, McNabb's Fourteenth Amendment due process claim for deprivation of peremptory strikes was doomed to fail with or without Ms. Barrow. Including Ms. Barrow, McNabb's petition reveals that he was forced to use only two peremptory strikes on jurors he contends should have been excused for cause on account of pretrial publicity. McNabb was afforded a total of fifteen strikes. (R. 1677.) Such a small percentage (approximately 13%) does not amount to a deprivation of state-created rights within the ambit of the Fourteenth Amendment's due process clause. *Ross*, 487 U.S. at 88-90. The claim (with or without Ms. Barrow) is due to be dismissed.

### b.   Ms. Brett

Ms. Brett did serve on the jury, so McNabb's pretrial publicity claim as to her is a Sixth and Fourteenth Amendment claim to a fair and impartial jury. McNabb raised this exact claim on direct appeal, and it was rejected by the Court of Criminal Appeals. *McNabb*

*I*, 887 So. 2d at 963-66.  As with *Strickland* claims reviewed under § 2254(d)(1), this is another area of the law where double deference is called for.  A trial court's determination regarding juror bias is a matter of fact, and is to be reviewed as such by a federal court on habeas review.  *Wainwright v. Witt*, 469 U.S. 412, 429-30 (1985); *Hightower v. Schofield*, 365 F.3d 1008, 1037 (11th Cir. 2004), *vacated on other grounds by* 125 S. Ct. 2929 (2005); *see also Newbury v. Thaler*, 437 F. App'x 290, 298 (5th Cir. 2011) (citing § 2254(e)(1)).

The Eleventh Circuit has stated that "[g]iven the difficulty of reviewing such equivocal answers from the cold record, years after they were uttered, it is obvious why we afford great deference to trial judge determinations of juror bias."  *Hightower*, 365 F.3d at 1040; *see also Newbury*, 437 F. App'x at 298; *Colvin v. Sheets*, 598 F.3d 242, 255 (6th Cir. 2010).

Ms. Brett's voir dire responses, which are reproduced in *McNabb I*, 887 So. 2d at 963-65, appear to be quite hopelessly contradictory on paper.  Ms. Brett commences her answers by stating rather forcefully that she believes, based upon the news reports, that McNabb is guilty.  (R. 1306-08.)  She ends her voir dire by rehabilitating herself and stating that she will consider only the evidence and  the law.[8]  Based upon his denial of McNabb's challenge for cause, the trial judge necessarily afforded more weight to Ms. Brett's later responses than her earlier ones.  A number of reasons which are not preserved in the transcript may underlie that decision.  Perhaps Ms. Brett was confused.  Perhaps she genuinely changed her mind.  Owing

---

[8]  McNabb's counsel did not question Ms. Brett on voir dire.

to the special deference the trial judge is afforded in evaluating potential jurors for bias, combined with the deferential review under § 2254 of this factual question, the Court cannot conclude that juror Brett was in fact biased based upon pretrial publicity.  Accordingly, McNabb's Sixth and Fourteenth Amendment fair and impartial jury claim labeled B(2) is due to be dismissed in its entirety.

### 2.    "Automatic Death Penalty" Juror Claims

### a.    Procedural Default Regarding Juror Bailey

Juror Bailey served on the petit jury in McNabb's case.  During jury selection, McNabb challenged Bailey for cause, contending that her voir dire responses indicated that she was an "automatic death penalty" juror.[9]  (Doc. # 1, at ¶ 123.)  McNabb argues that Bailey's seating on the jury violated his Sixth, Eighth, and Fourteenth Amendment right to a fair and impartial jury in a capital case.  *See Ross*, 487 U.S. at 85 ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the biased juror] for cause, the sentence would have to be overturned."); *Morgan*, 504 U.S. at 729 ("If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence."); *see also United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).

---

[9] In capital cases, jurors must be death-qualified.  Prospective jurors are screened through voir dire to ensure that none has views in opposition to or in favor of the death penalty so strong that they would prevent our substantially impair the prospective juror's performance at the sentencing phase.  *Wainwright v. Witt*, 469 U.S. 412, 423-24 (1985).  A juror who could never vote for the death penalty or a juror who would automatically vote for the death penalty is to be removed for cause.  *Morgan v. Illinois*, 504 U.S. 719, 728-29 (1992).

Respondent argues that the claim is procedurally defaulted because McNabb did not raise the issue regarding juror Bailey on direct appeal.  McNabb's appellate counsel did argue before the Alabama Court of Criminal Appeals on direct appeal that a number of jurors should have been struck for cause as "automatic death penalty" jurors.  However, McNabb concedes that juror Bailey did not make the list on direct appeal.  (Doc. # 38, at 36-37.) Instead, McNabb argues that this is an issue of fair presentation; because he argued on appeal that some jurors should have been stricken for cause for this reason, McNabb is not procedurally defaulted from now arguing the same claim as to juror Bailey.  This contention is meritless.  The decision as to whether a particular juror should be struck for cause is a uniquely individualized inquiry.  *See Hightower*, 365 F.3d at 1037 (finding that petitioner procedurally defaulted "automatic death penalty" juror claims as they related to specific jurors because "[such] claims, dependant as they are upon individual predispositions, are juror-specific").  The Court of Criminal Appeals's separate and thorough treatment in *McNabb I* of each "automatic death penalty" juror claim demonstrates as much.  *McNabb I*, 887 So. 2d at 944-61.  McNabb did not present the argument as it relates to juror Bailey on direct appeal, and the claim is procedurally defaulted.

Moreover, assuming that McNabb could satisfy the "cause and prejudice" exception to procedural default, his claim as to juror Bailey would fail on the merits.  Ms. Bailey's death-qualification voir dire commenced with her responding positively to the trial judge's questions, stating that she would consider the aggravating and mitigating circumstances and

would be willing and able to recommend both a death sentence and a sentence of life without

parole after weighing the circumstances.   Upon questioning by McNabb's counsel, the

following exchange occurred:

> [Ms. Bailey]:  For example, a parent who kills the person who molested their child, that's justifiable in my opinion, and I wouldn't vote for the death penalty under that circumstance.  But if a person kills someone for no justifiable reason, to me, that warrants the death penalty.  *If their life was in danger or they were in fear and their life is in danger, I wouldn't vote for [the death penalty].*
> . . .
> [McNabb's Counsel]:  I just want to know what you thought about the sentence of life without parole for an intentional killing.
> . . .
> [Ms. Bailey]:  If it was intentional, I would not feel comfortable voting for life without parole.
> [McNabb's Counsel]:  Why would that be?
> [Ms. Bailey]:  Because if it was intentional, that means they planned on doing it, so I couldn't in all good conscience. . . .
> . . .
> [The Court]:  Could you follow the instructions of the Court?
> [Ms. Bailey]:  To the best of my ability, yes.
> [The Court]:  If the jury should find the Defendant and if you are on this jury and find the Defendant guilty of capital murder and the mitigating circumstances outweigh the aggravating circumstances and the jury finds that the appropriate sentence to recommend would be life in the penitentiary without the possibility of parole based on the facts brought before you in the courtroom, could you join the other jurors and recommend that?
> . . .
> [Ms. Bailey]:  Yes, to the best of my ability.

(R. 1463-67 (emphasis added).)

McNabb argues that juror Bailey "consistently indicated that she would automatically

vote for death if the killing was intentional." (Pet. 13.)  According to McNabb, "[t]he only

time she indicated any possibility that she would consider life without parole [was] when the judge suggested the rest of the jury would recommend life without parole."  (Pet. 13-14.)

To begin, the Court reiterates the discussion above regarding the "great deference," *Hightower*, 365 F.3d at 1040, or the "special deference," *Newbury*, 437 F. App'x at 298, which is owed to the trial judge's factual determination of juror bias challenges.

From the cold record, it appears that Ms. Bailey understood "intentional killing" to mean something other than McNabb's counsel understood at the time.  She stated that "if it was intentional, that means they planned on doing it . . . ."  (R. 1465.)  Perhaps Ms. Bailey was confusing premeditated with intentional.  This confusion lessens the gravity of some of her responses.  Instead of stating that she would impose the death sentence in every case (because every capital murder is intentional), she is more likely stating that she considers premeditation an aggravating circumstance.[10]   This conclusion is further supported by Ms. Bailey's own concession toward the end of the questioning where McNabb's counsel asked her:  "Do you understand that capital murder is only an intentional killing?  Do you understand that?"  (R. 1468.)  Ms. Bailey responded, "Well, I do now."  (R. 1468.)

---

[10]  Of course, premeditation is not listed as a statutory aggravating circumstance. However, the Alabama legislature has recognized as statutory aggravating circumstances situations where premeditation often occurs:  "[t]he defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person[,]" *Ala. Code* § 13A-5-49(2); "[t]he capital offense was committed for pecuniary gain[,]" § 13A-5-49(6); "[t]he capital offense was especially heinous, atrocious, or cruel compared to other capital offenses[,]" § 13A-5-49(8); "[t]he defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct[,]" §13A-5-49(9); and "[t]he capital offense was one of a series of intentional killings committed by the defendant[,]" § 13A-5-49(10).

Second, as italicized above in the reproduced exchange, Ms. Bailey stated that she would consider the following as mitigating: "If their life was in danger or they were in fear and their life is in danger, I wouldn't vote for [the death penalty]." (R. 1463.) This was precisely McNabb's defense at the guilt and penalty phases of the trial. He considered his life to be in danger on account of his cocaine-paranoia and the fact that an unfamiliar person (the bail bondsman) appeared next to his car with a gun pointed at him.

Finally, Ms. Bailey rehabilitated herself by stating that she could follow the court's instructions and that she could impose a sentence of life without parole after weighing the aggravating and mitigating circumstances. (R. 1467-68.) McNabb's reprobation of the specific wording of the trial judge's questions does not fundamentally alter the nature of the question or of Ms. Bailey's response. The trial judge clearly afforded greater weight to Ms. Bailey's positive responses, and that factual decision is entitled to double deference on habeas review.

Accordingly, assuming the Court did arrive at the merits of this procedurally-defaulted claim, it is still due to be dismissed.

**b.    Fourteenth Amendment Due Process Deprivation of Peremptory Strikes Claim**

McNabb used five of his peremptory strikes to remove prospective jurors McNeal, Roten, Skipper, Wood, and Barrow, all of whom McNabb challenged for cause as "automatic death penalty" jurors.

First, for McNabb's claim to go forward, the Court must actually determine that these jurors were "automatic death penalty" jurors, as explained above.  Arriving at this conclusion requires the Court to confront both the "great deference" afforded to trial judges on these matters as well as  the presumption of correctness regarding the Alabama Court of Criminal Appeals's separate factual conclusions as to each of these prospective jurors in *McNabb I*, 887 So. 2d at 948-61.  § 2254(e)(1); *see also Hightower*, 365 F.3d at 1040.

After reviewing the record, it is apparent that McNabb cannot overcome these hurdles.  Furthermore, assuming that the Court determined that any or (even less likely) that all of these jurors were, indeed, automatic death penalty jurors, McNabb's use of five peremptory strikes out of his total of fifteen (approximately 33%), does not rise to the level of a Fourteenth Amendment due process violation for deprivation of his peremptory strikes.

Claim B(1) is due to be dismissed in its entirety.

## C.   Admission of Hearsay Evidence at Guilt Phase Regarding McNabb's Familiarity with Officer Gordon

McNabb's next claim is that the prosecution's introduction into evidence of a booking report from the Montgomery County Detention Facility (the "booking report"), a log from the Montgomery Police Department (the "log"), and an arrest warrant and accompanying affidavit (the "arrest warrant"), violated McNabb's Sixth and Fourteenth Amendment Rights to confrontation and cross-examination.  (Pet. 45.)  The Court of Criminal Appeals rejected this claim on direct appeal in *McNabb I*, 887 So. 2d at 966-71.  Accordingly, the Court views this claim through the deferential lens of § 2254(d).

27

The first observation the Court makes is that the last reasoned State court opinion to have addressed McNabb's claims pre-dated the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).  Accordingly, the Court of Criminal Appeals applied the Confrontation Clause analysis of *Ohio v. Roberts*, 448 U.S. 56 (1980).  In reviewing the Court of Criminal Appeals's decision under § 2254(d)(1), this Court must evaluate whether the "decision . . . involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States."  *Id.*  This Court understands this to mean that the Court must evaluate whether the Court of Criminal Appeals's decision involved an unreasonable application of the Supreme Court's Confrontation Clause jurisprudence that existed prior to *Crawford*.  Law that does not yet exist cannot be clearly established.  This is all despite the fact that *Crawford* was handed down prior to McNabb's conviction becoming final.[11]

Turning to the actual claim, the second observation the Court makes is that there is no connection between the hearsay and McNabb's alleged constitutional harm.  The complainant made hearsay statements to Officer Gordon, which were reproduced in Officer Gordon's affidavit, which gave probable cause for the arrest warrant to issue.  The hearsay statements related to the substantive charges against McNabb (receipt of stolen property), not to the existence or degree of interaction between Officer Gordon and McNabb during the

---

[11]  *Crawford* was handed down on March 8, 2004.  McNabb's conviction became final when the United States Supreme Court denied certiorari on November 29, 2004.  *McNabb v. Alabama*, 125 S. Ct. 606 (2004).

particular incident. *See McNabb I*, 887 So. 2d at 967 & n.2. In other words, cross-examining the hearsay declarant would have been utterly useless in refuting the State's position that McNabb knew Officer Gordon. Realistically, the only two witnesses McNabb could have cross-examined regarding his interactions with Officer Gordon during that incident were himself and Officer Gordon, whom McNabb had admitted to killing (just not intentionally) prior to the introduction of the documents. *See, e.g., United States v. Miller*, 116 F.3d 641, 667-68 (2d Cir. 1997) ("The right to confront hostile witnesses may be constructively waived by a defendant's conduct.").

Third, the Court of Criminal Appeals ruled that the damaging impeachment information contained in the booking report, log, and arrest warrant – Officer Gordon's name, which revealed, perhaps, that McNabb and Officer Gordon were not total strangers, as McNabb had testified on cross-examination – constituted peripheral matters. *Id.* at 969 ("A review of the record in this case reveals that the documents, showing that McNabb had contact with Officer Gordon before the murder, were peripheral."). Analyzed under the *Ohio v. Roberts* framework, the Court of Criminal Appeals held that "the documents were neither 'crucial' to the State's case nor 'devastating' to McNabb's defense." *McNabb I*, 887 So. 2d at 969. The Court of Appeals reasoning was thus:

> McNabb's main defense was that he had ingested so much cocaine on the morning of the crimes that he was incapable of forming the intent to kill. Whether or not McNabb knew Officer Gordon would not have affected McNabb's mental capabilities if, in fact, he had ingested so much cocaine that he was unable to form the intent to kill. At most, the documents suggested to

the jury that McNabb had a motive for killing Officer Gordon and only in that manner did they peripherally touch on McNabb's intent.

*Id.* The Court of Criminal Appeals's finding was neither contrary to nor an unreasonable application of then-clearly established federal law. § 2254(d).

The Court of Criminal Appeals also found that the documents were reliable under the *Ohio v. Roberts* framework. The court first noted that the booking report and the log were both admissible under "firmly rooted hearsay exceptions and, therefore, were inherently reliable." *McNabb I*, 887 So. 2d at 969 (citing *Ala R. Evid.* 803(6) & (8)). Both documents were also properly authenticated, according to the Court of Criminal Appeals. *Id.* (citing *Ala. R. Evid.* 901(a) & 902(4)). This Court finds that the Alabama Court of Criminal Appeals reliability analysis of the booking report and log under *Ohio v. Roberts* was not unreasonable.

Finally, the Court of Criminal Appeals found that the arrest warrant and affidavit were not properly authenticated and, thus, not properly admitted. *McNabb I*, 887 So. 2d at 971. However, the court found the information as it related to Officer Gordon both to be: (1) reliable, because the booking report and log (which were properly admitted) also revealed that Officer Gordon had contact with McNabb; and (2) neither "crucial" to the prosecution's case nor "devastating" to McNabb's defense because the arrest warrant and affidavit added nothing new to what was already properly in evidence regarding McNabb's familiarity with

Officer Gordon.   This decision was not an unreasonable application of then-clearly

established federal law.  McNabb's claim labeled C is due to be dismissed.[12]

## D.    Admission of a Mug Shot of McNabb at the Guilt Phase

McNabb claims that the introduction of a mug shot at the guilt phase violated

McNabb's constitutional rights.  The Court of Criminal Appeals addressed McNabb's claim

on direct appeal for plain error because McNabb did not object at trial, and found "no error,

plain or otherwise, in the admission of the mug shot."  *McNabb I*, 887 So. 2d at 973.  The

Court of Criminal Appeals also found harmless error:  "[t]here was ample evidence before

the jury that McNabb had a prior criminal history – including McNabb's own testimony

regarding his numerous prior encounters with law enforcement.  Therefore, the admission

of the mugshot, even if error, was harmless beyond a reasonable doubt."  *Id.* (citing *Chapman*

*v. California*, 386 U.S. 18 (1967)).

Assuming that McNabb can persuade the Court that the Court of Criminal Appeals's

decision that the admission of the mug shot was not error involved an unreasonable

application of clearly established federal law, McNabb cannot persuade the Court that the

Court of Appeals's harmless error analysis likewise was unreasonable.  The jury was already

aware of McNabb's previous encounters with law enforcement.  In fact, the factual predicate

for the murder of Officer Gordon was that McNabb had failed to appear for a hearing on

---

[12]  Even if the Court were to apply *Crawford* to McNabb's claims, the Court would reach
the same outcome.  Officer Gordon's name on the documents is not "testimonial" under
*Crawford* and its progeny.

another criminal charge, and his primary defense was that he had been on a cocaine binge.

The jury would not have been shocked to have learned that McNabb had prior encounters

with law enforcement.  In light of this and on account of the fact that the only real issue in

the case concerned McNabb's intent, the admission of the mugshot did not have substantial

effect on the outcome of the case.  *United States v. Romero-Rojo*, 67 F. App'x 570, 573 (10th

Cir. 2003); *Smith v. Withrow*, No. 97-2319, 1999 WL 503473, at *4 (6th Cir. July 6, 1999)

(unpublished table decision).  McNabb's claim labeled D is due to be dismissed.

**E.**     **Prosecution's "Misrepresentation" to the Jury at the Penalty Phase that the Guilty Verdict Had Established Two Aggravating Circumstances**

McNabb next argues that the prosecution's opening argument to the jury at the penalty

phase of the trial deprived McNabb of a fair and reliable sentencing recommendation, in

contravention of the Fifth, Eight, and Fourteenth Amendments.  The prosecutor's specific

statement with which McNabb takes issue is:

> Your verdict in this case, *I will submit to you and I will argue to you*, that you
> have found those two aggravating circumstances beyond a reasonable doubt,
> because by your verdict, you have found this defendant guilty of the capital
> murder offense of the murder of a [police] officer while in the performance of
> his duty.

(R. 2618 (emphasis added).)

The Court of Criminal Appeals rejected this claim, calling McNabb's interpretation

– that the prosecutor instructed the jury that they had already found two aggravating

circumstances – "strained."  *McNabb I*, 887 So. 2d at 988.  The Court of Criminal Appeals

focused on the fact that the prosecutor "did not tell the jury it had no option but to find the

existence of the two aggravating circumstances based on its guilt-phase verdicts." *Id.*
Instead, the Court of Criminal Appeals focused on the "I will submit to you and I will argue
to you" language the prosecutor used.  The jury was free to accept or reject the prosecutor's
"submission" and "argument."  The statement was not improper.  Moreover, the Court of
Criminal Appeals's decision was not contrary to nor did it involve an unreasonable
application of clearly established federal law.  § 2254(d).  McNabb's claim labeled E is due
to be dismissed.

**F.**     **The Trial Court's Instruction at the Guilt Phase that the Jury Could Infer Intent**
**to Kill From the Use of a Deadly Weapon**

McNabb's next claim is that the trial court violated McNabb's constitutional rights
to due process and to a fair trial by instructing the jury that the intent to kill might be inferred
from the use of a deadly weapon.  The specific instruction was:  "'[T]he intent to kill *may*
be inferred from the use of a deadly weapon and the character of the assault.'"  *McNabb I*,
887 So. 2d at 978 (quoting the trial court's oral charge to the jury) (emphasis added).

The Court of Criminal Appeals found that the instruction "created a permissive
inference," *id.* at 979, and rejected McNabb's claim.  *See also Francis v. Franklin*, 471 U.S.
307, 314 (1985) ("A permissive inference suggests to the jury a possible conclusion to be
drawn if the State proves predicate facts, but does not require the jury to draw that
conclusion."); *Applewhite v. Secretary, DOC*, 373 F. App'x 969, 972 (11th Cir. 2010) ("A
permissive inference does not violate the Due Process Clause as long as the suggested

conclusion 'is . . . one that reason and common sense justify in light of the proven facts before the jury.'" (quoting *Francis*, 471 U.S. at 314-15)).

Considering the specific language challenged, *Francis*, 471 U.S. at 315, which included the use of the word "may," the Court concludes that the instruction created a permissive inference and that the Court of Criminal Appeals's decision was not an unreasonable application of clearly established federal law. Furthermore, the inference the jury was entitled to make is not irrational or illogical, and was permitted by the evidence at trial. *Applewhite*, 373 F. App'x at 973 (citing *Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 163-67 (1979)). McNabb's claim labeled F is due to be dismissed.

## G.   Instruction on Lesser Included Offense of Reckless Endangerment for Attempted Murder Charges

McNabb contends that the trial court violated his due process rights when it refused to instruct the jury on the lesser included charges of reckless endangerment in lieu of attempted murder. (Pet. 53); *Beck v. Alabama*, 447 U.S. 625 (1980) (holding that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction). The Court of Criminal Appeals agreed that the trial court erred by refusing McNabb's requested lesser included offense instruction, but nevertheless found that the error was harmless. *McNabb I*, 887 So. 2d at 976 (citing *Chapman v. California*, 386 U.S. 18 (1967)).

McNabb's basis for requesting the reckless endangerment charge was the same as his defense to the capital murder charges; he was so intoxicated that he was unable to form a

specific intent to kill. The Court of Criminal Appeals reasoned that because the jury rejected McNabb's prime defense to the capital murder charges, it necessarily would have rejected McNabb's reckless endangerment argument as it related to the attempted murder charges. *McNabb I*, 887 So. 2d at 977 ("By finding McNabb guilty of capital murder with respect to the murder of Officer Gordon, the jury rejected McNabb's claim that he was so intoxicated that he was unable to form the intent to kill . . . . By virtue of the jury's verdict of capital murder and its express rejection of McNabb's defense of intoxication, we conclude that an instruction on reckless endangerment . . ., although proper, would not have affected the outcome of th[e] case . . . ." (internal citation and quotation marks omitted)).

This Court likewise concludes that any constitutional error in the failure to give the lesser included offense instruction was harmless. "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 8 (1999); *United States v. Rodriguez*, 406 U.S. 1261, 1269 (11th Cir. 2005) (en banc); *see also Hopper v. Evans*, 456 U.S. 605 (1982) (applying harmless error to unconstitutional statute forbidding trial court from giving jury instruction on lesser included offense in a capital case). The jury's verdict on the charges of capital murder logically foreclose any possibility that the jury would have found in McNabb's favor by convicting him of the lesser included reckless endangerment crime in place of the non-capital attempted murder charges. McNabb's claim labeled G is due to be dismissed.

**H.**     **The Jury Instructions on the Attempted Murder Charges**

McNabb argues that the attempted murder supplemental jury instruction violated his due process rights because it "fail[ed] to require the jury to find [McNabb] guilty of all [of the] elements of [attempted murder] beyond a reasonable doubt . . . ." (Pet. 55.)  McNabb argues that the specific intent instruction was deficient because the trial court failed to limit the jury's consideration of the attempted murder charges to the persons McNabbb allegedly had the specific intent to kill.

The Court of Criminal Appeals rejected the claim.  *McNabb I*, 887 So. 2d at 979-81. The Court of Criminal Appeals noted that the trial judge had instructed the jury a total of three times during its initial set of charges on the attempted murder charges.  All three times the trial court specifically identified the victims of the attempted murder charges.  *Id.* at 981. The Court of Criminal Appeals further highlighted the fact that the trial court instructed the jury on specific intent during its supplemental charge, even though it did not identify the victims by name.  *Id.*  Furthermore, this Court notes that at the beginning of the trial court's supplemental instruction, it reminded the jury of its obligation to "'remember the complete instruction [from the initial charges].'"  *McNabb I*, 887 So. 2d at 980 (quoting trial court's supplemental instruction).

McNabb has offered nothing that would warrant disturbing the Court of Criminal Appeals's decision on habeas review, and his claim labeled H is due to be dismissed.

I.    **Failure to Instruct the Jury at Penalty Phase of Cocaine Impairment as Non-Statutory Mitigating Circumstance**

McNabb argues that he was denied a proper sentencing procedure in violation of the Eight and Fourteenth Amendments when the trial court declined to specifically instruct the jury on McNabb's mitigating circumstance argument regarding cocaine intoxication. (Pet. 57-58.)  Relying on Alabama law, the Court of Criminal Appeals rejected McNabb's claim. McNabb's claim also fails when presented as a federal constitutional claim.

McNabb re-brands his claim under *Lockett v. Ohio*, 438 U.S. 586 (1978), arguing that the trial court's refusal to instruct the jury on cocaine intoxication as a mitigating circumstance actually precluded the jury from considering cocaine intoxication as a mitigating circumstance.  The illogicality of this leap is betrayed by the trial court's instructions on mitigating circumstances, which included the following statement:  "'In addition to the mitigating circumstances previously specified, mitigating circumstances shall include any aspect of a defendant's character, or record, and any other circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.'"  *McNabb I*, 887 So. 2d at 986 (quoting trial court's penalty phase instructions).  That instruction clearly permitted the jury to consider McNabb's cocaine intoxication as a mitigating circumstance, and his claim under *Lockett* fails.  McNabb's claim labeled I is due to be dismissed.

**J.**     **Alabama's "Lack of a Standard" for Determining Whether Aggravating Circumstances Outweigh Mitigating Circumstances**

McNabb's next claim is that Alabama's capital sentencing scheme is unconstitutional because it does not provide a measure or standard by which aggravating circumstances must outweigh mitigating circumstances in order to justify a recommendation of or imposition of the death penalty.  (Pet. 59 (citing *Godfrey v. Georgia*, 446 U.S. 420, 427 (1980) ("The penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious nature.").)  McNabb contends that the Alabama procedure's allegedly inadequate guidance violates his Fifth and Fourteenth Amendment rights to due process.

The Court of Criminal Appeals rejected this claim.  *McNabb I*, 887 So. 2d at 983.  The Supreme Court of Alabama granted certiorari and affirmed.  *McNabb II*, 887 So. 2d at 1002-04.  The Court of Criminal Appeals relied upon *Franklin v. Lynaugh*, wherein the United States Supreme Court rejected the notion that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.  487 U.S. 164, 179 (1988); *see also United States v. Chandler*, 996 F.2d 1073, 1901-92 (11th Cir. 1993); *Ford v. Strickland*, 696 F.2d 804, 817-18 (11th Cir. 1983) (*en banc*).  Alabama's procedure, as set forth in § 13A-5-46, provides an appropriate method for balancing aggravating and mitigating circumstances.  *See McNabb II*, 887 So. 2d at 1002-04.  McNabb's claim labeled J is due to be dismissed.

38

**K.**     **Method of Execution Claim**

McNabb challenges Alabama's former lethal injection protocol under the Eighth and Fourteenth Amendments.  Because Alabama's lethal injection protocol has changed since McNabb's habeas petition was filed, this claim has been mooted and is due to be dismissed. Futhermore, the claim is more properly brought as a § 1983 action.  *See Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1261 (11th Cir. 2009) ("A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." (citing *Hill v. McDonough*, 547 U.S. 573, 579-83 (2006))).  McNabb's claim labeled K is due to be dismissed.

**L.**     **Refusal of State Courts to Grant McNabb a Rule 32 Hearing**

McNabb argues that the refusal of the Alabama courts to grant McNabb an evidentiary hearing for his Rule 32 petition violated his constitutional rights to due process and equal protection.  It is unclear, however, what relief McNabb requests, other than a hearing in this Court.  Such a hearing would be a fruitless exercise.  This Court can and has – in the preceding and subsequent pages of this opinion – readily determined from the parties' submissions, including the voluminous state court record, that McNabb was not entitled to relief on any of his claims alleged in the Rule 32 petition.  Rule 8(a), § 2254 Cases ("If the petition is not dismissed, the judge must review the answer, any transcripts or records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an

evidentiary hearing is warranted.").  No evidentiary hearing is warranted and McNabb's claim labeled L is due to be dismissed.

**M.    McNabb's Contentions that Trial Court's Death Sentence Violated the Sixth Amendment**

> ***1.    Record Does Not Reliably Establish Penalty Phase Aggravating Circumstances, in Violation of Ring v. Arizona, or That Any One Was Found Unanimously***

McNabb's first argument is that the jury never explicitly found any of the three statutory aggravating circumstances beyond a reasonable doubt, and that this omission violated *Ring v. Arizona*, 536 U.S. 583 (2002).

Examining this claim requires an understanding of Alabama's hybrid capital sentencing scheme.  After a defendant is adjudicated guilty of capital murder, the jury (usually the same jury) reconvenes for the sentencing portion of the trial: the penalty phase. The jury's function is to render an "advisory verdict" to the trial court.  *Ala. Code* § 13A-5-46(d) ("The jury shall then retire to deliberate concerning the advisory verdict it is to return.").  As part of the advisory verdict, the jury must consider the statutory aggravating circumstances offered by the prosecution as well as any mitigating circumstances offered by the defendant.  Because the finding of a single aggravating circumstance authorizes the maximum punishment to be increased to death from life without parole, the jury must find at least one statutory aggravating circumstance unanimously beyond a reasonable doubt. *Ring*, 536 U.S. at 609.  Consistent with *Ring*, the only circumstance in which Alabama law allows a jury to return an advisory verdict of death is when the jury has found unanimously,

beyond a reasonable doubt, the existence of one or more statutory aggravating circumstances. § 13A-5-46(e).

McNabb challenges the statutory scheme because it does not require the jury to enumerate explicitly in its advisory verdict which statutory aggravating circumstance[s] it has found unanimously beyond a reasonable doubt. McNabb's complaint can be analogized to a request in a non-capital case for a jury's verdict form to list all of the elements of the charged crime, so that the defendant can be sure that the jury found each element unanimously beyond a reasonable doubt.

Although such a system may be preferential as a matter of full disclosure, it is not part of Alabama's capital sentencing scheme and, more importantly, it is not required by the Constitution. The rendering of an advisory verdict of death (that comports with *Ring*) necessarily requires a finding of one or more statutory aggravators. § 13A-5-46(e). The jury in this case was properly instructed and rendered an advisory verdict of death. By necessity, it unanimously found beyond a reasonable doubt at least one of the three potential statutory aggravating circumstances. Because the jury made that finding, the maximum sentence was increased to death, and the trial court's imposition of that sentence did not violate *Ring*.

### 2.   *The Trial Court's Reliance on Three Aggravating Circumstances, Which the Jury did not Find Unanimously, Violated McNabb's Sixth and Fourteenth Amendment Rights*

McNabb makes the related argument that the trial court, when it sentenced McNabb to death, relied on all three statutory aggravating circumstances, without the guarantee that

the jury found all of them unanimously beyond a reasonable doubt.  McNabb argues that this hybrid system of capital sentencing violates *Ring* because it allows the trial court to consider statutory aggravating circumstances (perhaps) not found to exist by the jury.

The very portion of *Ring* which McNabb quotes undermines his argument:  "'[W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance *necessary* for the imposition of the death penalty.'"  (Pet. 71 (quoting *Ring*, 536 U.S. at 609 (emphasis added)).)   As explained above, the jury was required to find one or more statutory aggravating circumstances unanimously beyond a reasonable doubt before it could render an advisory verdict of death.  § 13A-5-46(e).  When one statutory aggravating circumstance is found by a jury beyond a reasonable doubt, the maximum penalty is shifted upwards from life without parole to death, and any other statutory aggravating circumstances may be found by the sentencing judge without increasing the statutory maximum penalty.  Thus, any *additional* statutory aggravating circumstances found by the trial judge are not "necessary for the imposition of the death penalty."  *Ring*, 536 U.S. at 609.

In this case, the jury's finding of at least one statutory aggravating circumstance (because it rendered an advisory verdict of death) allowed the trial judge to consider all three without effecting a *Ring* violation.  McNabb's claim is due to be dismissed.

### 3. *McNabb's Argument That the Court Improperly Expanded the Role of the Jury at the Penalty Phase*

McNabb next argues, somewhat in contradiction to his prior two arguments, that the Alabama Supreme Court improperly "held that Mr. McNabb's jury, instead of merely issuing a general advisory verdict in accordance with Alabama law, actually made the specific fact-findings as to the existence of an aggravating circumstance." (Pet. 73 (citing *McNabb II*, 887 So. 2d at 998).)   McNabb argues that "[i]n so holding, the [Alabama Supreme Court] morphed the jury's non-unanimous 10-2 general advisory verdict into a unanimous fact-finding beyond a reasonable doubt of the existence of an aggravating circumstance." (Pet. 73.)

McNabb attempts to morph Alabama law.  As explained above, the jury's advisory verdict in a capital case in Alabama involves a two-step process.  First, the jury must determine unanimously beyond a reasonable doubt that one or more statutory aggravating circumstances exist.  §13A-5-46(e).  If no statutory aggravating circumstance is found to exist, the jury must recommend (and the sentencing judge must impose) life without parole.[13] §13A-5-46(e)(1).  However, if the jury finds a statutory aggravating circumstance, it then moves to step two, weighing that circumstance against the mitigating circumstances.  On

---

[13]   The Court does see one circumstance where Alabama's capital sentencing scheme could run afoul of *Ring*.  Assume that the jury found no statutory aggravators, and returned an advisory verdict of life without parole, as it is required to do.  The sentencing judge misinterprets the advisory verdict as having found the statutory aggravator, but nevertheless recommending life without parole based upon the mitigating circumstances outweighing the aggravator(s).  The sentencing judge then disregards the advisory verdict and imposes death, despite the fact that no aggravator was found to exist by the jury.  Fortunately, that situation does not exist here.

account of this two-step process, a jury may unanimously find a statutory aggravating circumstance, but may not unanimously recommend the death penalty. Some jurors may feel that the mitigating circumstances outweigh the aggravating circumstances unanimously found to exist.

McNabb argues that the trial court's charges insufficiently instructed the jury on its duties. In affirming McNabb's death sentence, the Alabama Supreme Court considered McNabb's argument that the trial court's penalty phase instructions "did not ensure that all 12 jurors found [unanimously] the existence of any one of the three aggravating factors on which the trial court based its sentence." *McNabb II*, 887 So. 2d at 1002; *see also McNabb I*, 887 So. 2d at 992 (stating that the three statutory aggravating circumstances found by the trial court were: "(1) that McNabb knowingly created a great risk of death to many persons," *Ala. Code* § 13A-5-49(3); "(2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody," *Ala. Code* § 13A-5-49(5); and "(3) that the murder was committed to disrupt or to hinder the lawful exercise of any governmental function or the enforcement of laws," *Ala. Code* § 13A-5-49(7)). Although conceding that the jury "was instructed to make a unanimous finding as to whether any of the three aggravating circumstances ultimately found to exist by the trial judge existed," McNabb argued that the trial court erred by "failing to instruct the jury expressly that it must unanimously find the existence of the *same* aggravating circumstance." *McNabb II*, 887 So. 2d at 1005. In rejecting McNabb's argument, the Alabama Supreme Court found that "[t]he

instructions contained a number of premises that, when considered as a whole, apprised the jury of the proper unanimity requirement." *Id.*

The Alabama Supreme Court's finding is entitled to deferential review under § 2254. Having reviewed the charges with § 2254 in mind, this Court concludes the Alabama Supreme Court's holding is correct and McNabb is not entitled to relief.

### 4. *Ring Requires that the Jury Find that the Aggravating Circumstances Outweigh the Mitigating Circumstances Unanimously Beyond a Reasonable Doubt*

McNabb argues that *Ring* requires that the jury's weighing of the aggravating and mitigating circumstances result in a unanimous decision beyond a reasonable doubt prior to imposition of a sentence of death. This claim can be discarded forthrightly. *Ring* only requires that "[i]if a State makes an increase in a defendant's authorized punishment contingent on [a] finding of fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." 536 U.S. at 602 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 482-83). Again, McNabb misunderstands *Ring*'s application to Alabama's capital sentencing scheme. It is not the jury's weighing of the aggravating and mitigating circumstances that increases a capital defendant's authorized punishment to death. In fact, under Alabama law, that balancing can be disregarded entirely by the trial court who sentences the capital defendant. § 13A-5-47(e) ("While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."). Rather, the jury only begins to weigh the aggravating and mitigating circumstances once it has found

a statutory aggravating circumstance unanimously beyond a reasonable doubt.  At that point, the capital defendant's maximum sentence is increased to death.  There is no additional upward shift (how could there be?) when the jury engages in the balancing of the aggravators and mitigators.  Accordingly, *Ring* does not apply to the jury's weighing of aggravating and mitigating circumstances, and McNabb's claim is due to be dismisssed.  *See United States v. Mitchell*, 502 F.3d 931, 993-94 (9th Cir. 2007) (rejecting similar argument in context of the Federal Death Penalty Act).

## N.   McNabb's Indictment was Constitutionally Defective Because It Failed to Specify Aggravating Circumstances on Which a Death Sentence Might be Imposed

McNabb's final argument is that his constitutional right to due process was violated because he did not receive adequate notice that he could receive the death penalty.  *Lankford v. Idaho*, 500 U.S. 110 (1991).  McNabb argues that this constitutional violation was effected because the indictment failed to list possible aggravating circumstances.  However, McNabb was charged with two counts of capital murder, §§ 13A-5-40(a)(5) & (17), which provided him adequate notice.  Furthermore, a defendant must have a meaningful opportunity to deny or explain the State's evidence used to procure a death sentence.  *Gardner v. Florida*, 430 U.S. 349, 362 (1977).  The record reflects that McNabb was provided ample notice prior to the penalty phase that the State intended to rely on the three statutory aggravating circumstances eventually presented to the jury.  (R. 2577-78.)  McNabb's claim labeled N is due to be dismissed.  *Moeller v. Weber*, 649 F.3d 839, 848 (8th Cir. 2011).

## IV.  CONCLUSION

In conclusion, the Court determines based upon the pleadings and the state court record that McNabb is not entitled to an evidentiary hearing or writ of habeas corpus on any of his claims.

Accordingly, it is ORDERED that McNabb's Petition for Writ of Habeas Corpus (Doc. # 1) is DISMISSED.  An appropriate final judgment will be entered.

DONE this 27th day of March, 2012.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE

47